IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE ESPIRIDION LONGORIA,       Plaintiff, | § § § | |
| v. | § | Civil Action No. 3:13-CV-1690-B-BK |
| CAROLYN COLVIN, Acting Commissioner of Social Security,       Defendant. | § § § § § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Judge's order of referral, the undersigned now considers the parties' cross-motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment* [Doc. 14] be **DENIED**, Defendant's *Motion for Summary Judgment* [Doc. 18] be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

### I.   BACKGROUND[1]

**A.   Procedural History**

Plaintiff seeks judicial review of a final decision by Defendant denying his claim for Supplemental Security Income ("SSI") benefits under the Social Security Act ("the Act"). In November 2009, Plaintiff filed for SSI, claiming that he became disabled in November 2002. [Tr. at 143–148]. At his hearing before an Administrative Law Judge ("ALJ") in August 2011, Plaintiff amended his disability onset date to October 1, 2009. [Tr. at 68]. Plaintiff's application was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). [Tr. at 1–7, 15–29, 82–85].

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr.".

### B. Factual Background

At the time of his alleged onset of disability, Plaintiff was 44 years old and was an unemployed high school graduate. [Tr. at 39, 143]. He last worked as a cashier in 2000. [Tr. at 40]. Though there was no specific event that brought about the onset of his disability, Plaintiff had previously been treated for diabetes mellitus, hypertension, back pain, and chest pain. [Tr. at 227, 242, 249, 259, 265, 280].

Following Plaintiff's onset date, he sought assistance with visual impairments. From 2009 to 2011, Plaintiff presented multiple times to multiple doctors for blurred vision, and each doctor found that Plaintiff's conjunctivae was clear, his extraocular motion was normal, and his pupils were functional. [Tr. at 670–71, 689, 774–75, 899]. As to his visual acuity, during an eye examination in May 2010, Dr. Steve Surratt found Plaintiff's unaided vision to be 20/40 in the left eye and 20/30 in the right. [Tr. at 676]. With glasses, Plaintiff's vision was 20/30 in the left eye and 20/20 in the right. [Tr. at 676]. Dr. Surratt diagnosed Plaintiff with left sixth nerve paresis and stated that it was likely secondary to Plaintiff's diabetes. [Tr. at 676]. In July 2011, Plaintiff was examined at the Cataract and Eye Center of Cleburne, where he complained of blurred vision and again was found to have 20/30 to 20/40 vision in his left eye and 20/30 in his right. [Tr. at 894].

Plaintiff presented to Dr. Candie Richardson for severe headaches on December 18, 2009, stating that they sometimes wake him up at night, but Ibuprofen and Tylenol provide relief. [Tr. at 669]. On August 30, 2010, Plaintiff also presented to Dr. Bradford Commons with headaches, and explained that he has difficulty following up with his physicians because he and the doctors disagree ("get in fights"). [Tr. at 774]. After receiving fluids and medication, Plaintiff reported to Dr. Commons that he was feeling better. [Tr. at 778].

In December 2009, Plaintiff underwent a psychological consultative examination by Diana Jefferson, a practicum student under the supervision of Bobbie Lilly, PhD. [Tr. at 554–57]. Ms. Jefferson noted that Plaintiff was not clean and had a pronounced odor. [Tr. at 555]. Plaintiff stated that his apartment was without water and he did not brush his teeth because they are all "infected," but he used mouthwash. [Tr. at 555]. Ms. Jefferson observed psychomotor retardation and impairment in Plaintiff's attention, concentration, and recall, but noted that no indications of psychosis were present and he showed no difficulties related to motor, balance, or gait. [Tr. at 555]. Plaintiff told Ms. Jefferson he is able to perform most of his activities for daily living: he can groom himself, dress himself, shop for food, prepare food, wash clothes, clean his house, pay bills, get around town without getting lost, take medicine without assistance, and get a prescription filled. [Tr. at 555]. Ms. Jefferson noted that Plaintiff demonstrated low intellectual ability but determined that there were insufficient criteria for a diagnosis of mild mental retardation. [Tr. at 556]. Ms. Jefferson also noted that Plaintiff has a history of depression consistent with the depression demonstrated in his interview. [Tr. at 556]. Ms. Jefferson provisionally diagnosed Plaintiff with mild mental retardation based on his history, but noted that she lacked the criteria to make a formal diagnosis. [Tr. at 556].

In March 2010, Plaintiff was evaluated by Dr. Don Marler, a state agency medical consultant. [Tr. at 626–28]. While Dr. Marler found Plaintiff "moderately limited" in three social interaction categories, he concluded that Plaintiff retains the abilities to: understand, remember, and carry out simple instructions; make decisions; attend and concentrate for extended periods; appropriately interact with coworkers and supervisors; and adapt to routine changes in a work setting. [Tr. at 627–28]. Dr. Marler also concluded that Plaintiff's claimed

3

limitations due to symptoms of mental impairment are not fully supported by the evidence. [Tr. at 628].

### C. Administrative Hearing

At the August 2011 administrative hearing, Plaintiff testified about his employment history, living habits, and medical impairments. Plaintiff testified that he previously worked as a cashier at multiple retail establishments, including Dollar General which let him go for talking too much. [Tr. at 40–42]. Plaintiff also testified that he lives close to his family members and is able to get rides with them to the doctor and other places. [Tr. at 45–46]. He stated that he visits his father once or twice per week and receives visitors on a regular basis. [Tr. at 49]. Plaintiff testified that he goes to church twice a week and tries to leave his home when he can walk. [Tr. at 53–54].

The ALJ heard testimony from a vocational expert ("VE") at the hearing as well. In response to the ALJ's hypothetical limiting an individual's work to two hours of standing and other restrictions described below, the VE testified that the jobs of ticket checker (5,626 jobs locally and 69,607 nationally, reduced by 50 percent due to Plaintiff's limitations), information clerk (6,650 jobs locally and 84,138 nationally, reduced by 25 percent due to Plaintiff's limitations), and office clerk (7,144 jobs locally and 97,081 nationally, reduced by 25 percent due to Plaintiff's limitations) are available. [Tr. at 64–66].

### D. The ALJ's Findings

In December 2011, the ALJ issued an unfavorable decision. [Tr. at 15–29]. The ALJ found the following severe impairments: obesity, insulin-dependent diabetes mellitus, hypertension, hyperglobulinemia [extraordinarily high concentration of globulins in the

4

circulating blood plasma][2], polycythemia vera [chronic increase above normal of red blood cells], coronary artery disease, venous stasis [congestion and slowing of circulation in veins] and varicose veins in his lower extremities, neuropathy in his feet, headaches, degenerative spondylosis in his thoracic spine, left sixth nerve paresis, and monoclonal gammopathy [primary disturbance in immunoglobulin synthesis] of undetermined significance. [Tr. at 16]. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light" work subject to the following limitations: standing and walking a total of only two hours in an eight-hour workday; performing postural activities only occasionally; avoiding ladders, ropes, scaffolds, temperature extremes, concentrated exposure to dust, fumes, chemicals, vibration, and hazards (such as working at unprotected heights and working around dangerous moving machinery); and performing only simple job tasks. [Tr. at 27]. At step four, the ALJ found that Plaintiff was incapable of performing his past relevant work because that work requires the performance of activities precluded by his RFC limitations. [Tr. at 27]. At step five, the ALJ concluded, on the basis of the VE's testimony, that there are a significant number of jobs in the national economy that Plaintiff can perform and, thus, Plaintiff is not disabled as defined in the Act. [Tr. at 28].

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine

---

[2] Medical definitions are from *Stedman's Medical Dictionary* (27th Edition 2000), available on Westlaw.

whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)–(f), 416.920(b)–(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th

Cir. 1995). Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III.   DISCUSSION

A.   **Whether the Commissioner erred in assessing Plaintiff's RFC.**

The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. § 404.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most that a claimant is able to do despite his physical and mental limitations, 20 C.F.R. § 416.945(a), and is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 416.920(a)(4). In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p; 20 C.F.R. § 416.923. The final responsibility for deciding a claimant's RFC is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1). Based on the record before the Court, the Commissioner committed no reversible error in determining Plaintiff's RFC in this case.

Plaintiff first argues that the ALJ did not consider the limitations stemming from several of Plaintiff's severe impairments when determining his RFC. Specifically, Plaintiff asserts that his left sixth nerve paresis was ignored by the ALJ. [Doc. 14 at 7]. He contends that the ALJ did not refer Plaintiff for a consultative examination as he suggested he would at the hearing and did not obtain vocational information as to the effect of this condition. [Doc. 14 at 7]. Plaintiff also states that Defendant's RFC formulation does not account for Plaintiff's headaches. [Doc. 14 at 8]. Finally, Plaintiff maintains that the ALJ failed to consider or even reference in his decision

the findings of either Dr. Lilly or Dr. Marler concerning Plaintiff's mental limitations. [Doc. 14 at 9]. Plaintiff argues that Dr. Marler, the State's consulting expert, found Plaintiff to be moderately limited in three social interaction categories, but the ALJ found him only mildly limited. [Doc. 14 at 9]. Plaintiff also contends that limiting his RFC to simple work does not sufficiently account for his psychomotor retardation as found by Dr. Lilly, which hinders Plaintiff's concentration, persistence, and pace. [Doc. 14 at 9–10].

Defendant responds that Plaintiff failed to satisfy his burden to specify any additional limitations caused by his impairments that the ALJ should have incorporated into the RFC. [Doc. 18-1 at 8–9]. With regard to Plaintiff's left sixth nerve paresis, Defendant contends that the ALJ correctly determined that Plaintiff's subjective complaints about his vision were unsupported by the record and the record does not support any additional limitations. [Doc. 18-1 at 9–10]. As to Plaintiff's headaches, Defendant asserts the ALJ accounted for any potential environmental triggers in his RFC, and further notes the headaches are relieved by over-the-counter medicine. [Doc. 18-1 at 10–11]. Defendant also posits that the ALJ fully recounted Dr. Lilly's findings, and assessed Plaintiff with moderate limitations due to his mental impairment. [Doc. 18-1 at 11]. With regard to Plaintiff's argument that the ALJ's RFC failed to consider Plaintiff's limitations in concentration, persistence, and pace, Defendant argues that judges of this Court have repeatedly held that restricting a plaintiff to simple tasks adequately accounts for such limitations. [Doc. 18-1 at 12–13].

Plaintiff replies that the ALJ's RFC, limiting Plaintiff to jobs that require no exposure to hazards, cannot be said to fully consider all of the limitations that may result from his visual impairment. [Doc. 19 at 4]. Plaintiff also contends that, having found Plaintiff's headaches to be a severe impairment, the ALJ is obligated to assess their limitations and impact upon Plaintiff's

ability to work. [Doc. 19 at 4]. Plaintiff further argues that Defendant is attempting to construe "moderate" and "mild" as sufficiently similar with regard to Plaintiff's mental impairment. [Doc. 19 at 4–5].

*1. Physical Impairments*

Plaintiff contends that the ALJ ignored his left sixth nerve paresis [Doc. 14 at 7], however, the ALJ discussed in his decision Plaintiff's examination by Dr. Surratt [Tr. at 20], and directly addressed the effect of Plaintiff's visual impairment on his RFC determination [Tr. at 25]. Specifically, the ALJ noted that Plaintiff's visual acuity has remained "very good" despite his nerve paresis [Tr. at 25], which is evidenced by the examinations of four doctors, who all found that Plaintiff's conjunctivae was clear, extraocular motion was normal, and pupils were functional [Tr. at 671, 689, 775, 899]. Moreover, Plaintiff's vision problems were correctable; Dr. Surratt, who assessed Plaintiff's uncorrected vision as 20/40 and 20/30, noted that Plaintiff's vision improved when glasses were used. [Tr. at 676]. Dr. Surratt further found that Plaintiff had no background diabetic retinopathy in 2011. [Tr. at 883]. In light of the foregoing, the ALJ conclusion that Plaintiff's self-reported "visual symptoms are out of proportion to objective findings on testing" [Tr. at 25] is supported by substantial evidence. *See Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992)* ("conflicts in the evidence are for the [Commissioner] to resolve").

Moreover, based on Plaintiff's own reports, his headaches were easily treated. [Tr. at 669, 774, 778]. And, as Defendant notes, the ALJ's RFC limited Plaintiff to jobs that would not expose him to environmental hazards that might trigger or aggravate his headaches like dust, fumes, chemicals, and vibrations. [Doc. 18-1 at 10 (citing Tr. at 27)]. Absent a specific limitation caused by his headaches that Plaintiff contends was overlooked by the ALJ, the ALJ's

decision is based on substantial evidence.  See *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se.  Plaintiff must show that [he] was so functionally impaired. . . that [he] was precluded from engaging in any substantial gainful activity.").  Even assuming the ALJ erred in not specifically addressing Plaintiff's headaches in formulating his RFC, in light of there being no evidence of a resulting impairment, any such error is harmless.  See *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected.").

   2. *Mental Impairments*

Contrary to Plaintiff's argument that the ALJ failed to discuss the limitations found by Dr. Lilly, in his decision, the ALJ discussed at length the report of Ms. Jefferson, Dr. Lilly's practicum student who actually performed the evaluation.  [Tr. at 22].  The ALJ explicitly noted Ms. Jefferson's observation of psychomotor retardation, and her provisional diagnosis of mild mental retardation due to a lack of criteria.  [Tr. at 22].  However, the ALJ concluded that Plaintiff did not, in fact, have the medically-determinable impairment of mild mental retardation based largely upon Plaintiff's reports that difficulties in daily activities were a result of physical rather than mental impairments, as well as the fact that Plaintiff did not report that his mental deficits interfered with his ability to perform work-related activities.  [Tr. at 24].  The ALJ recognized Ms. Jefferson's observation of psychomotor retardation in concluding that Plaintiff has moderate limitations in concentration, persistence, and pace "such that he should perform only simply job tasks."  [Tr. at 24].

The ALJ's findings are also consistent with Dr. Marler's conclusion that Plaintiff's limitations due to symptoms related to mental impairment are not fully supported by the

evidence. [Tr. at 628]. In support of his argument, Plaintiff focuses on Dr. Marler's categorical findings that he is moderately limited in three areas of social functioning, but ignores Dr. Marler's detailed narrative. Dr. Marler found that Plaintiff retained the ability to: understand, remember, and carry out simple instructions; make decisions; attend and concentrate for extended periods; appropriately interact with coworkers and supervisors; and adapt to routine changes in a work setting. [Tr. at 627–28]. The ALJ's finding that Plaintiff is only mildly limited is wholly consistent with and supported by Dr. Marler's narrative. *See [Greenspan](#), 38 [F.3d at 236](#)* (the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner).

Finally, Contrary to Plaintiff argument, judges of this Court have previously found the RFC limitation of "simple, repetitive work" sufficient to accommodate limitations in concentration, persistence, or pace. *See, e.g.*, *Smith v. Colvin*, No. 13-CV-1884, 2014 WL 1407437 at *4 (N.D. Tex. 2014) (Horan, M.J.) (noting that an RFC limited to simple work "reasonably incorporates a moderate . . . limitation in concentration, persistence, or pace."); *Gonzalez v. Comm'r of Soc. Sec. Admin.*, No. 10-CV-2003, 2012 WL 1058114 at *7 (N.D. Tex. 2012) (Stickney, M.J.) (same); *Chadwell v. Astrue*, No. 08-CV-0736, 2010 WL 3659050 at *11 (N.D. Tex. 2010) (Cureton, M.J.) (finding a moderate limitation in concentration, persistence, or pace "not inherently contradictory" with an RFC restricting a plaintiff to simple work); *see also Bordelon v. Astrue*, 281 F. App'x 418, 422–23 (5th Cir. 2008) (per curiam) (finding a restriction to rare public interaction, low stress, and one- to two-step instructions reflected that the ALJ reasonably incorporated the plaintiff's moderate concentration, persistence, and pace limitations). Furthermore, it is Plaintiff's burden to come forward with additional limitations in

11

concentration, persistence, or pace that went ignored by the ALJ, and he has not done so. *See Hames*, 707 F.2d at 165 (detailing how the plaintiff must demonstrate functional limitations).

Based on the foregoing, the Court finds that the ALJ's RFC finding is based on substantial evidence.

**B.     Whether Defendant demonstrated that Plaintiff can perform work existing in significant numbers in the national economy.**

Plaintiff next argues that Defendant failed to show at Step 5 of the sequential inquiry the existence of work in significant numbers in the national economy that Plaintiff can perform. Specifically, Plaintiff contends that the jobs put forth by the VE go beyond the scope of the ALJ's hypothetical, in which he restricted the individual to "simple tasks." [Doc. 14 at 11–12]. Plaintiff posits that because each of the jobs identified by the VE has a Reasoning Developmental Level ("RDL") of 3 in the *Dictionary of Occupational Titles* ("*DOT*"),[3] they are inconsistent with a limitation of simple work tasks. [Doc. 14 at 12]. Plaintiff further asserts that the ALJ's analysis is faulty because he failed to indicate how many of the jobs in the local economy would comport to Plaintiff's particular functional limitations. [Doc. 14 at 13].

Defendant responds that the jobs identified by the VE meet the regulatory definition of simple work because they have a Specific Vocational Preparation ("SVP") rating of 2, which means they involve unskilled work "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." [Doc. 18-1 at 14 (quoting 20 C.F.R. §§ 404.1568(a))]. Defendant also contends that jobs categorized in the *DOT* as having an RDL of 3 ("RDL-3") are not inconsistent with requiring only simple tasks. [Doc. 18-1 at 14]. Defendant

---

[3] A Reasoning Development Level ("RDL") of 3 is defined as the ability to apply "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to deal "with problems involving several concrete variables in or from standardized situations." DICTIONARY OF OCCUPATIONAL TITLES App. C.

argues further that, in any event, the more specific VE testimony about jobs meeting Plaintiff's limitations should control. [Doc. 18-1 at 15–16]. Defendant also asserts that the ALJ may rely on a VE's knowledge of job data in assessing the number of jobs available in the national economy for someone with Plaintiff's limitations. [Doc. 18-1 at 18].

Under the Act's burden-shifting analysis, once a claimant establishes disability, the burden shifts to the Commissioner to "show that there is other substantial gainful employment available that the claimant is able to perform." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If the Commissioner fulfills this burden of pointing out potential alternative employment, the burden "shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). Here, the ALJ met his burden of establishing that there is other gainful employment available in the national economy that the claimant can perform. However, Plaintiff offered no direct evidence, nor did he cross-examine the VE, to prove that he cannot perform jobs with RDL-3. Thus, unless a direct and obvious conflict exists between the VE's testimony and the *DOT*, the ALJ met his step five burden. *See* SSR 00-4p, 2000 WL 1898704 at *4; *Carey*, 230 F.3d at 146 (when a "direct and obvious conflict" exists between the VE's testimony and the *DOT*, the ALJ must resolve that conflict by determining whether the VE's explanation is reasonable and thus more reliable than the *DOT*); *Nichols v. Comm'r of Soc. Sec. Admin.*, No. 10-CV-0651, 2011 WL 2669056 at *6 (N.D. Tex. 2011) (Stickney, M.J.) (When indirect conflict did not undergo adversarial development at the administrative hearing, the VE "testimony may be relied upon without resolving the conflict as long as the record reflects an adequate basis for doing so" (citing *Carey*, 230 F.2d 145–46)), *recommendation accepted by* 2011 WL 2669099 (Fish, J.).

Whether a direct conflict exists turns on the specific wording of the ALJ's RFC assessment. *See, e.g., Gaige v. Astrue*, No. 12-CV-0008, 2013 WL 1291754 at *13-14 (N.D. Tex. 2013) (Cureton, M.J.) (finding that RDL-3 jobs do not facially conflict with an RFC limiting the claimant to "simple, repetitive work"); *Pete v. Astrue*, No. 08-CV-0774, 2009 WL 3648453 at *5 (W.D. La. 2009) (finding RDL-2 and RDL-3 jobs do not facially conflict with "one to three step procedures that are routine and repetitive"); *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997), (finding RDL-2 jobs facially conflict with an RFC limiting the claimant to "simple directions").

Here, there is no direct conflict between the VE's testimony and the *DOT's* RDL-3 definition. The ALJ limited Plaintiff's RFC limitation to "only simple job tasks" [Tr. at 27], and placed no specific limitation on the type of instructions to be followed. *See, e.g.*, *Nichols*, 2011 WL 2669056 at *6. It is analogous to the "simple, repetitive work" language used by the ALJ in *Gaige* that this Court previously held not to conflict with RDL-3 jobs:

> At a RDL of 3, Gaige would need to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." DOT, app. C at 1011. Contrary to Gaige's argument that he could not perform jobs at the RDL of 3 because such jobs are not "simple," "the fact that instructions may be various, furnished in multiple forms, or detailed, does not preclude them from being simple." *Pete v. Astrue*, No. 08–774, 2009 WL 3648453, at *5 (W.D. La. Nov. 3, 2009). A reading of the definition of RDL of 3 does not, on its face, indicate that jobs with a RDL of 3 involve more than simple, repetitive work. Furthermore, the classification of the specific jobs identified above as "unskilled" indicates "that they are by definition simple." *Id*.

*Gaige,* 2013 WL 1291754 at *14. Moreover, any potential conflict between the VE and *DOT* was addressed by further limiting the available jobs in the national economy — reducing the availability by 50% for ticket checker, 25% for information clerk, and 25% for office clerk — to accommodate more particularly Plaintiff's limitations. [Tr. at 28, 64–66].

14

Finally, an ALJ is entitled to rely on various sources, including the *DOT* and/or VE testimony to determine the quantity of the jobs existing in the national economy available given a plaintiff's functional limitations. 20 C.F.R. §§ 404.1566, 416.966. Thus, in this case, the ALJ was well within his authority to rely on the VE's testimony. *See* Tr, at 28 (ALJ stating, "I accept the testimony of the vocation expert in finding that there are a significant number of jobs in existence in the national and regional economies that claimant can perform"). Moreover, to the extent that the VE's testimony solicited by the ALJ conflicted with that resulting from questioning by Plaintiff's representative, the ALJ was entitled to resolve the conflict against Plaintiff. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

The ALJ's determination that there are significant jobs in the local economy that Plaintiff can perform is based on substantial evidence.

## IV.  CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment* [Doc. 14] be **DENIED**, Defendant's *Motion for Summary Judgment* [Doc. 18] be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on May 21, 2014.

```
_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE
```

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL / OBJECT**

   A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE